# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

STUART L. STEIN, AND STUART L. STEIN,
P.A., a professional law corporation d/b/a The
Stein Law Firm,

               Plaintiffs,

v.                                          No. CIV 02-917 LFG/___

LEGAL ADVERTISING COMMITTEE OF
THE DISCIPLINARY BOARD, et al.,

               Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court[1] on a Motion to Dismiss Based on the Principles of Abstention, Exhaustion, and/or Immunity [doc. 21] filed by Defendants Legal Advertising Committee of the Disciplinary Board ("LAC"), Kelly A. Genova, Chair, Stan Harris, Suzanne M. Barker, C. Brian Charlton, John P. Cosentino, Michael P. Fricke, Troy W. Prichard, Gregory P. Sherman, Diane Helgevold, Barbara Montoya, and Dr. Phillip J. Simmons, all members of the LAC ("members of the LAC"), the Disciplinary Board of the Supreme Court of the State of New Mexico ("Disciplinary Board"), Edward L. Chavez, Chair, James F. Beckley, Carmen E. Garza, Michael H. Hoses, Robert S. Murray, Richard J. Parmley, Jr., Mike G. Paulowsky, Dorothy S. Peters, Sasha Siemel, and Victor

---

[1]Although the parties initially did not consent to proceed before a United States Magistrate Judge [doc. 5], all parties now have agreed to proceed before the Magistrate Judge.  [Doc. 64.]

1

A. Titus, all members of the Disciplinary Board ("members of the Disciplinary Board"); the Honorable Patricio M. Serna, the Honorable Joseph F. Baca, the Honorable Gene E. Franchini, the Honorable Pamela B. Minzner, and the Honorable Petra Jimenez Maes, the Chief Justice and Justices of the Supreme Court of New Mexico ("Justices of the New Mexico Supreme Court").[2]  Defendants request dismissal of this lawsuit under Rules 12(b)(1) and/or (6)[3] of the Federal Rules of Civil Procedure, based on their argument that the Court should abstain, under principles of <u>Younger</u>, from considering the merits of an ongoing disciplinary action taken against Plaintiff Stuart L. Stein ("Stein").  Alternatively, Defendants contend that Plaintiffs should be required to exhaust their state remedies before being permitted to proceed in federal court.  Finally, Defendants argue that should the Court retain jurisdiction of this matter, all Defendants are entitled to immunity from suit.  [Doc. 22.]

Plaintiffs contend that Defendants have not met all of the prongs of the <u>Younger</u> Abstention Doctrine, that Plaintiffs have exhausted their state remedies and that the Defendants are not entitled to immunity, with the exception of the New Mexico Supreme Court justices.  Plaintiffs also argue that Defendants consented to the federal court's jurisdiction.  Plaintiffs further request that should the Court intend to grant this Motion to Dismiss, it hold in abeyance the ruling while permitting a

---

[2]Subsequent to the filing of Defendants' motion, Plaintiffs stipulated to the dismissal of the New Mexico Supreme Court.  [Doc. 50.]  Thus, the Justices of the New Mexico Supreme Court are no longer parties to this lawsuit.

[3]It is proper to consider matters outside the pleadings for purposes of deciding a motion to dismiss that is based on abstention.  <u>Hazbun Escaf v. Rodriquez</u>, 191 F.Supp. 2d 685, 687 n.7 (E.D. Va.), <i>aff'd</i> 52 Fed. Appx. 207 (4th Cir. 2002).  Consideration of a motion to dismiss based on principles of abstention is similar to a motion to dismiss for lack of subject matter jurisdiction.  In deciding a motion to dismiss for lack of subject matter jurisdiction, the Court is permitted to review affidavits and other evidence to resolve factual disputes.  Thus, matters outside the pleadings have been considered in deciding the question of abstention.  <i>See</i> 2A <u>Moore's Federal Practice</u> ¶ 12.07[2.-1]; Rule 12(b) of the Federal Rules of Civil Procedure.

reasonable time for discovery on these issues and an opportunity for Plaintiffs to supplement their opposition brief.

No oral argument is necessary in resolving this motion. After carefully considering the briefing and the pertinent law, the Court concludes that Defendants' Motion to Dismiss based on grounds of <u>Younger</u> abstention should be granted. In addition, principles of exhaustion require that Plaintiffs exhaust their state remedies before proceeding with the federal lawsuit. Because of the Court's ruling, it does not reach Defendants' arguments regarding immunity,[4] although Defendants may elect to reassert those arguments, should this case be reinstated after the disciplinary proceedings against Stein are concluded. The Court concludes that no additional discovery is necessary before ruling on this matter and therefore, denies Plaintiffs' request to hold its ruling in abeyance pending further discovery and briefing. The Court disagrees that there is evidence demonstrating that Defendants consented to federal court jurisdiction of these claims. Therefore, this case will be dismissed, without prejudice, based on principles of <u>Younger</u> abstention and exhaustion.

## Procedural and Factual Background

The focus of this dispute is legal advertising. Stein is an attorney admitted to practice law in the State of New Mexico. Stuart L. Stein, P.A. is a Florida professional corporation with its main office in Albuquerque, New Mexico. Plaintiffs' practice is devoted primarily to the area of estate planning. Plaintiffs are suing the Legal Advertising Committee and the Disciplinary Board, along with the individual members of each of these entities in relation to legal advertising issues.

---

[4]Once a Court concludes that abstention is appropriate, it should not then adjudicate the case on the merits. <u>Amanatullah v. Colorado Board of Medical Examiners</u>, 187 F.3d 1160, 1163 n. 4 (10th Cir. 1999).

3

Plaintiffs claim that for years they have been submitting advertising copy or scripts to the Legal Advertising Committee prior to public dissemination in accordance with the New Mexico Legal Advertising Rules. [First Amended Complaint.] In the past, some of Plaintiffs' ads have been rejected and some approved. [Id. at ¶ 21.] With respect to the current advertising disputes at issue, Plaintiffs explain that this matter escalated upon receipt of a letter, dated June 28, 2002, that threatened disciplinary action against Stein "after almost two years of conflict" between Plaintiffs and Defendants. [Doc. 3, at 5.]

The June 28, 2002 letter to Stein from the Disciplinary Board notified Stein of changes or deletions that needed to be made in Plaintiffs' estate planning seminar advertisements. Stein was told to remove testimonials from newspaper ads on grounds that testimonials are prohibited by Supreme Court rule. Stein claimed that he had previously been permitted by the Legal Advertising Committee to use testimonials and therefore had a vested right in continuing to use testimonials. The Disciplinary Board letter also advised Stein to change or remove the word "steal" from this ad: "Probate and death taxes can steal more than 50% from your children's inheritance!" The letter addressed other advertisements of Plaintiffs and informed Stein what language had to be removed or changed. In addition, the letter stated that if Stein was willing to make the proposed changes, a recommendation would be made that Stein receive an Informal Admonition for violations of the pertinent rules. Otherwise, formal disciplinary charges "will be filed to address these issues." Stein was to respond to the letter by July 15, 2002. [Doc. 14, Ex. A.]

On July 1, 2002, Stein wrote to the Deputy Chief Disciplinary Counsel for the Disciplinary Board requesting additional time until August 5 before responding to the June 28 letter. He noted

that the "file had been open and ongoing for over a year and a half . . ."). Stein was granted an extension.

On July 29, 2002, "once it was understood that . . . [Defendants] would file a future disciplinary action against . . . Stein" [doc. 39], Plaintiffs filed this Complaint for Preliminary Relief, Declaratory Judgment and Damages [doc. 1] in federal court. On July 30, 2002, Plaintiffs filed a Motion for Preliminary Injunction, seeking to prohibit Defendants from bringing any disciplinary actions against Stein based on claimed violations to New Mexico's Legal Advertising Rules, pending resolution of this lawsuit. [Doc. 2.] Before Defendants answered[5] the initial Complaint, Plaintiffs filed a First Amended Complaint for Preliminary Relief, Declaratory Judgment and Damages ("Amended Complaint"). [Doc. 12.] The Amended Complaint alleges First Amendment violations, Due Process violations and Equal Protection violations and is brought under 42 U.S.C. § 1983.

Specifically, Plaintiffs request a preliminary injunction against Defendants from bringing any disciplinary complaint against Plaintiffs related to certain legal advertisements, a Declaratory Judgment that the advertisements at issue are protected commercial speech and not subject to restrictions sought by Defendants, a finding that Defendants have unconstitutionally applied SCRA §§ 16-701 *et seq.* to Plaintiffs, damages in excess of $100,000.00, attorneys fees, and specific additional or modified legal advertising rules and/or other assurances from Defendants. [Doc. 12.]

On October 16, 2002, Defendants filed this Motion to Dismiss [doc. 21], a Motion for Partial Summary Judgment on the First Amendment Claims [doc. 19], a Motion for Partial Summary Judgment on the Due Process Claims [doc. 23], and a Motion for Partial Summary Judgment on the Equal Protection Claims [doc. 25]. All of these motions are fully briefed, and Plaintiffs have

---

[5]Defendants filed a Motion to Dismiss, in lieu of filing an Answer.

submitted a number of exhibits in support of their responsive pleadings, including the legal advertisements at issue and correspondence between the parties.

On October 29, 2002, the Disciplinary Board filed a Disciplinary Complaint or formal charges against Stein before the Disciplinary Board of the Supreme Court of the State of New Mexico [Disc. No. 10-2002-445.]  The Disciplinary Complaint specified the charges against Stein related to legal advertising and alleged violations of the Rules of Professional Conduct.  The Complaint directed that a hearing committee be designated to hear the evidence and make findings of facts and recommendations to the Disciplinary Board and that Stein be disciplined and assessed costs of the proceeding.  It appeared initially that counsel would agree to temporarily stay these disciplinary proceedings until the Court resolved the motion to dismiss.  However, Defendants subsequently would only agree to a stay of 30 days (until December 19, 2002), in relation to the disciplinary complaint.  [Doc. 35].

In anticipation of the current stay expiring on December 19, 2002, Plaintiffs filed a Motion for Temporary Restraining Order [doc. 39].  On December 17, 2002, the parties stipulated to a stay of the disciplinary proceedings for an additional 30 days, or until about January 16, 2003, due to a reassignment of judges.  [Doc. 42.]  That stay has since lapsed and apparently the disciplinary proceedings have not yet proceeded.  In a letter to the Court from Stein, dated January 27, 2003, Stein advises that he wrote the Chair of the Disciplinary Board on January 20, 2002, requesting an additional 30 day stay to ensure that this Court could adequately address the Motion for Temporary Restraining Order.  As of January 27, 2003, Stein had not received a response.  His January 27 letter to this Court requests a hearing on the TRO as soon as possible.  Because the Court has determined that abstention is proper, Stein's request for a hearing on the TRO is denied.

## Regulation of Legal Advertising in New Mexico

The discipline of attorneys admitted to practice in New Mexico is highly regulated. An attorney admitted to practice in New Mexico "is subject to the exclusive disciplinary jurisdiction of the Supreme Court and the Disciplinary Board. . . ." SCRA 17-201. Violations of the Rules of Professional Conduct are grounds for disbarment, suspension, indefinite suspension and/or public censure by the New Mexico Supreme Court. SCRA 17-206(A). The Disciplinary Board may issue formal reprimands or informal admonitions for rule violations. SCRA 17-206(A).

The Disciplinary Board consists of 12 members, including 10 members of the State Bar and two non-attorney public members. The Supreme Court designates one attorney as chair of the Board. SCRA 17-101. The Board is authorized with the power to consider and investigate the conduct of any attorney within the jurisdiction of the New Mexico Supreme Court and can initiate an investigation on its own motion or upon a complaint made by another person. SCRA 17-102. Subject to approval by the Supreme Court, the Board also appoints a chief disciplinary counsel who is authorized to docket for formal investigation any complaint that sets forth reasonable grounds to believe the Rules of Professional Conduct have been violated. SCRA 17-105.

In 1992, the New Mexico Supreme Court adopted revised legal advertising rules. <u>McDevitt v. Disciplinary Board of the Supreme Court for the State of New Mexico</u>, 108 F.3d 341 (Table, Text in Westlaw), 1997 WL 88154 (10th Cir. Mar. 3, 1997), *cert. denied*, 522 U.S. 815 (1997). Those rules are contained within the Rules of Professional Conduct -- SCRA 16-701 through 707. Committee comments to the rules provide that regulation of advertising was intended to "emphasize what informs the public over what promotes the lawyer." SCRA 16-701, State Bar Task Force Comment. "By adoption of [these rules], the State of new Mexico declares it has a substantial

interest and need to reasonably regulate the content and manner of advertising by lawyers to help minimize harm to the public interest resulting from advertising which is uninformative and misleading." Id.

The Rules of Professional Conduct also provide for the creation of a committee known as the Legal Advertising Committee of the Disciplinary Board ("LAC") that consists of 10 members. The New Mexico Supreme Court appoints four attorneys and four non-attorneys to the LAC. The president of the State Bar appoints two attorney members. SCRA 16-706(A). The LAC's function, in part, is to evaluate all advertisements filed with it for compliance with the rules regarding advertising. SCRA 16-706(B). The LAC has the authority to investigate conduct of an attorney who advertises, either through initiating an investigation on its own or by responding to a complaint. The LAC reports the results of its investigation, findings of fact, conclusions, and recommendations to the Board's disciplinary counsel if the LAC finds a violation. SCRA 16-706(C).

Rule 16-707 provides detailed and comprehensive requirements for the submission of legal advertisements for review. Copies of each advertisement or revisions to an advertisement must be provided to the LAC for evaluation, either prior to or concurrently with the lawyer's first dissemination of the ad. SCRA 16-707(B). A filing fee must accompany the submission. SCRA 16-707(D)(5). The LAC has thirty days to review and notify the attorney about any adverse findings. If the LAC does not communicate to the attorney within 30 days, the advertisement is deemed approved. SCRA 16-707(E). If the committee determines the advertisement does not comply with the rules, the committee must inform the attorney that dissemination or continued dissemination may result in professional discipline. SCRA 16-707(G).

Formal disciplinary proceedings brought against attorneys are governed by the Rules of Civil Procedure and are initiated by the filing of a specification of charges with the chair of the Disciplinary Board. SCRA 17-309(A) & (B). The specification of charges must contain a statement of the charge(s), the provisions of the rules at issue, names of known witnesses, and the name of the prosecuting attorney. SCRA 17-309(B). A hearing officer is designated to hear the matter and issues a formal notice to the respondent to advise him or her of the formal charges that have been instituted. SCRA 17-309(C). The respondent-attorney has the right to file an answer, to be represented by an attorney, to confront all witnesses against him or her, and to use the power of subpoenas. The respondent-attorney also may object to the qualification of the hearing officer or other members of the hearing committee. Id. Discovery may be permitted upon a showing of need. SCRA 17-311. The formal hearing must be held no later than 120 days from the date of the expiration of the deadline to file an answer. The hearing is recorded. SCRA 17-313. Formal hearings are adversarial in nature and are determined by a majority vote of the hearing committee. SCRA 17-313(D). The parties may introduce evidence and witnesses, and may also submit proposed findings and conclusions after the hearing is held. SCRA 17-313. After the findings and conclusions are filed, the parties have ten days to request oral argument or permission to submit briefs to the Disciplinary Board, should they wish to do so. SCRA 17-313(E).

The committee's findings of fact, conclusions and recommendations are submitted to the Disciplinary Board. After receipt, the Board chair appoints one or more members of the board to serve as a hearing panel. The Disciplinary Board panel only considers evidence in the record of the hearing committee. SCRA 17-314.

The Board or panel may accept, reject, modify or increase the sanctions contained in the recommendations of the LAC.  The Board may elect to dismiss the disciplinary complaint or may issue a formal reprimand.  If the Board decides to recommend suspension, disbarment, public censure or probation of the attorney, the recommendation goes before the New Mexico Supreme Court. SCRA 17-315.

If the Board recommends suspension, disbarment, public censure or probation, the respondent-attorney may request a hearing before the Supreme Court.  The Court has the discretion to grant the request but a hearing is not required.  SCRA 17-316.  The Supreme Court may reject or accept any or all of the findings, conclusions or recommendations of the Disciplinary Board.  SCRA 17-316.

## Analysis

## I.      YOUNGER ABSTENTION

The doctrine arising out of the United States Supreme Court decision in Younger v. Harris, 401 U.S. 37, 43-44, 91 S.Ct. 746 (1971) generally requires federal courts to abstain from hearing federal constitutional claims that involve or call into question ongoing state procedures.  "Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts."  Id. at 43.  Thus, there is a strong policy against federal court interference in pending state court proceedings.

The policies underlying the Younger abstention doctrine are derived from a notion of comity, including

> a proper respect for state functions, a recognition of the fact that the entire country
> is made up of a Union of separate state governments, and a continuance of the belief
> that the National Government will fare best if the States and their institutions are left
> free to perform their separate functions in their separate ways.

10

Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 431, 102 S.Ct. 2515 (1982) (internal citation omitted).  As part of a federal court's respect paid to state courts, there should be no presumption that state courts will not safeguard federal constitutional rights.  Id. Indeed, "[w]here vital state interests are involved, a federal court should abstain 'unless state law clearly bars the interposition of the constitutional claims.'"  Id. at 432.  Moreover, "[a]bstention is based upon the theory that '[t]he accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection.'"  Id. at 435 (internal citations omitted).

While Younger emanated from the context of state criminal proceedings, the abstention doctrine applies with equal force to state administrative proceedings.  Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc., 477 U.S. 619, 627, 106 S.Ct. 2718 (1986).  More specifically, Younger abstention applies to attorney disciplinary proceedings.  Middlesex, 457 U.S. at 432-37.  In addition, the doctrine "dictates that federal courts not interfere with state court proceedings by granting equitable relief – such as injunctions of important state proceedings or declaratory judgment regarding constitutional issues in those proceedings – when such relief could adequately be sought before the state court."  Amanatullah, 187 F.3d at 1163.

When the requirements for Younger abstention have been met, abstention is mandatory.  In other words, absent extraordinary circumstances, the doctrine must be invoked when its conditions are satisfied.  Id.  Thus, under Younger, a federal court must abstain from exercising jurisdiction when the following three conditions are met:  (A) there is an ongoing civil or administrative

proceeding that is "judicial in nature"[6]; (B) the state proceedings "involve important state interests, matter which traditionally look to state law for their resolution or implicate separately articulated state policies;" and (C) the state court provides an adequate forum to hear the claims raised in the federal complaint.  Id. (internal citations omitted); Crenshaw v. The Supreme Court of Indiana, et al., 170 F.3d 725, 727-28 (7th Cir.), cert. denied, 528 U.S. 871 (1999).  In addition, there is an exception to Younger abstention in cases where the complaining party can prove harassment or that the prosecutions were undertaken by state officials in bad faith, and in other circumstances where irreparable injury can be shown.  Amanatullah, 187 F.3d at 1165.

### A.   *Ongoing Civil or Administrate Proceeding*

Plaintiffs argue that there was no ongoing state proceeding prior to the time they filed this federal lawsuit on July 29, 2002.  Instead, it is Plaintiffs' position that the investigation or series of letters exchanged between Plaintiffs and Defendants before July 29, 2002 do not constitute an ongoing proceeding of the type required by Younger abstention.  Plaintiffs apparently would concede that if the Disciplinary Board had actually filed formal charges by or before July 29, 2002, then there would have been an ongoing state or administrative proceeding.  However, formal charges were not brought by the Disciplinary Board until October 29, 2002, at which time deadlines to schedule an evidentiary hearing were prompted.

Thus, the question before the Court is whether the actions taken by the LAC or Disciplinary Board prior to Plaintiffs' July 29, 2002 federal lawsuit could be considered an ongoing administrative

---

[6]Although the parties dispute whether the LAC's or Board's actions constituted an ongoing administrative proceeding before Stein filed this federal lawsuit, the parties do not appear to contest the "judicial nature" of those proceedings.  Indeed, the United States Supreme Court apparently resolved that question in finding that "[f]rom the very beginning a disciplinary proceeding is judicial in nature . . . ."  Middlesex, 457 U.S. at 433. Even if Stein had raised the argument that the disciplinary proceedings are not judicial in nature, such argument would fail.  *See* Bell v. The Legal Advertising Committee, et al., No. CIV 95-0471 BB/LCS, slip op. at *4 (D.N.M. July 24, 1996).

proceeding for purposes of applying <u>Younger</u> abstention.  Plaintiffs argue that none of the cases cited by Defendants support the proposition that the institution of an investigation, without filing a formal complaint, is sufficient to meet the first prong of the <u>Younger</u> test.  Plaintiffs also claim that the investigation by the LAC or Board could never be enough to trigger abstention and that to accept Defendants' argument would mean that a federal court could only accept jurisdiction of a case like this if the attorney filed the federal lawsuit at the same time he or she submitted advertisements for review to the LAC.

The Court disagrees with Plaintiffs on both counts.  First, there is Tenth Circuit authority for the proposition that an initial investigation by a disciplinary agency is sufficient to meet the definition of ongoing for purposes of abstention.  Plaintiffs supply no authority to the contrary.  In <u>Amanatullah</u>, the district court's abstention decision under principles of <u>Younger</u> was affirmed.  187 F.3d 1160. That case involved an investigation by the Colorado Board of Medical Examiners into a physician's conduct or practice.  The Board's first step was to send a "30 day" letter to the physician regarding allegations regarding his conduct.  <u>Id.</u> at 1162.  The parties then exchanged a series of letters.  After the investigation proceeded, the inquiry panel referred the case to the Attorney General for commencement of formal disciplinary proceedings to revoke the physician's license.  <u>Id.</u>  The Tenth Circuit held that the state proceedings began when the Colorado Board issued its first "30 day" letter to the physician advising him of its investigation.  <u>Id.</u> at 1163-64.  "The state proceedings did not begin when the formal complaint was filed by the attorney general, as contended by Amanatullah." <u>Id.</u>   Thus, the Court concluded that substantial state proceedings preceded the date when Amanatullah filed his federal complaint.  <u>Id.</u> at 1164.

Amanatullah is similar to this case, where the LAC and Plaintiffs engaged in a series of communications about the conflict before a formal complaint was filed in October 2002.  At a minimum, the state or administrative proceedings began when the Disciplinary Board sent Stein the June 28, 2002 letter, which preceded the filing of his federal lawsuit.  Certainly, the June 28, 2002 letter apprized Stein of the continuing and ongoing nature of the Board's investigation and indeed, Stein was required to respond to that letter.  Instead, Stein explained that  "once it was understood that . . . [Defendants] would file a future disciplinary action against . . . Stein" [doc. 39], Plaintiffs elected to file this lawsuit.

The Ninth Circuit, in Hirsh v. Justices of the Supreme Court of the State of California, 67 F.3d 708, 711-12 (9th Cir. 1995) appears to have reached a similar conclusion with respect to whether initial disciplinary proceedings are considered "ongoing."  In Hirsh, disciplinary proceedings against an attorney were commenced by serving the accused attorney with a Notice to Show Cause. No formal evidentiary hearing had yet been held.  Id. at 711.  After receiving the Notice to Show Cause but before the hearing was held, Hirsh filed a federal lawsuit.  Id. at 712.  The Court held that the attorney faced ongoing disciplinary proceedings and that each prerequisite of Younger was met.

Similarly, the Sixth Circuit in Berger v. Cuyahoga County Bar Association, 983 F.2d 718 (6th Cir.), cert. denied, 508 U.S. 940 (1993), found that preliminary disciplinary procedures were sufficient to meet the "ongoing" prong of Younger.  In Berger, the Bar Association received a complaint about the plaintiffs' conduct, and an investigation followed.  The Grievance Committee scheduled an Investigative Hearing for November 20, 1989.  After the hearing, the Committee concluded there was probable cause to file a formal complaint and the matter was referred to a probable cause panel.  Id. at 720.  However, a finding of probable cause by the committee was

preliminary in nature.  <u>Id.</u> n.3.  That finding then had to be reviewed by the Board of Commissioners which might or might not lead to a formal complaint.  <u>Id.</u> The Court noted that on January 23, 1990, "in the midst of the investigation,"  Berger filed a federal suit.  <u>Id.</u> at 721.  There appeared to be no question that the administrative proceeding was ongoing.  *See also* <u>Crenshaw</u>, 170 F.3d at 728 n. 1 (collecting cases holding that investigation constituted ongoing procedure).

Unlike the above two scenarios, the pertinent New Mexico rules do not require a finding of probable cause or a notice to show cause in order to commence attorney disciplinary proceedings. The New Mexico rules do, however, authorize the LAC to conduct investigations of attorney conduct and to recommend discipline as a result of those investigations.  It matters not whether procedural devices like notices to show cause or probable cause findings, characterized as "preliminary" in nature, are required.  Here, the LAC is authorized to conduct disciplinary investigations and had commenced those investigations of Stein, certainly by June 28, 2002, if not much earlier.  Thus, the disciplinary proceedings were pending when Stein filed this lawsuit.

The Court also rejects Stein's second argument that the investigation by the LAC cannot meet the ongoing prong and that to find otherwise would mean an attorney must simultaneously file a federal lawsuit when he or she submits an advertisement to the LAC for review.  No investigation had commenced when Stein submitted the ads to the LAC for initial review.  However, by June 28, 2002, Stein was informed of specific changes that needed to be made to Plaintiffs' advertisements and that if he did not comply, disciplinary action would be taken.  The June 28, 2002 letter was the culmination of an investigation and series of communications between Plaintiffs and Defendants that had been ongoing for one to two years.  Indeed, Stein concedes this is true when he states that he received the June 2002 letter after engaging in "almost two years of conflict" over these ads with

Defendants.  [Doc. 3, at 5.]  Moreover, Stein attaches letters to and from the Disciplinary Board or

LAC, dated March and April 2001, regarding these very conflicts.  [Doc. 53, Plaintiffs' exhibits.]

Clearly, the parties had engaged in a number of attempts to settle the dispute, and the LAC had

undertaken a rather extensive investigation into these advertising issues before Stein filed a lawsuit

in July 2002.

The fact that the administrative investigation and/or proceedings commenced before any

substantial advancement took place in this federal lawsuit is additional support for finding that

abstention is proper.  *See* Bell, 998 F. Supp. at 1236 n.5 (also discussing that Younger mandates

"exhaustion" where state proceedings are available even if not pending) (*relying on* Ohio Civil Rights

Comm'n, 477 U.S. at 628 n.2).  *See also* Majors v. Engelbrecht, 149 F.3d 709, 713 (7th Cir. 1998)

("unless a federal plaintiff beats the state to court – and gets past the preliminary stages . . . the time

when the federal suit is filed is largely irrelevant"); Middlesex, 457 U.S. at 436 (no reason for federal

courts to ignore subsequent developments in the state proceedings even if the state proceedings are

brought against the party after that party filed the federal complaint – as long as proceedings of

substance on the merits in the federal lawsuit have not occurred).

Here, this federal lawsuit is still in its initial stages.  No answer has been filed.  Discovery, save

for initial disclosures under Fed.R.Civ.P. 26, has been stayed pending resolution of the motion to

dismiss.  No rulings on the merits of the motions for summary judgment have been entered.

Moreover, two months after Stein filed his federal lawsuit, formal charges were brought against him,

and those proceedings before the State Supreme Court's Disciplinary Board are pending.  *See* Weitzel

v. Division of Occupational and Professional Licensing, 240 F.3d 871, 876 (10th Cir. 2001) (even

if abstention may have been inappropriate before the plaintiff filed a complaint in state court, once the state court proceeding was filed it was ongoing, and abstention was proper).

Thus, the Court concludes that the disciplinary proceedings against Stein are ongoing for purposes of meeting the Younger inquiry.

### B.   *Important State Interests Served*

Plaintiffs properly concede that the regulation of attorney advertising is an important state interest.  [Doc.49, at 7.]  Thus, the Court need not further discuss this element of the Younger abstention doctrine.

### C.   *Opportunity to Present Federal Constitutional Claims*

Federal courts will not interfere with ongoing state proceedings so long as those proceedings provide the attorney the opportunity to raise constitutional challenges.  Amanatullah, 187 F.3d at 1164.  "It is sufficient for purposes of Younger abstention that federal challenges, such as . . . civil rights complaints, be raised in state court judicial review of administrative proceedings. Id.; Majors, 149 F.3d at 713 (subsequent judicial review is a sufficient opportunity to raise constitutional challenges).

The Tenth Circuit also reasoned that "the Younger doctrine is particularly applicable in a case [involving disciplinary proceedings against a physician] where the pending state proceeding may rectify any constitutional violations."  Weitzel, 240 F.3d at 876.  Younger abstention provides an opportunity to obviate the constitutional problem and "intelligently mediate federal constitutional concerns and state interests."  Id. (internal citations omitted).

Stein argues that "there is no adequate opportunity to raise and have timely decided the federal issues by a competent state tribunal."  [Doc. 49, at 4.]  He further claims that there is "an

absolute bar to raise these constitutional claims" in the disciplinary proceedings.  [Id., at 6.]  Stein relies on the unpublished opinion of McDevitt v. Disciplinary Board of the Supreme Court for the State of New Mexico, 108 F.3d 341 (Table, Text in Westlaw), 1997 WL 88154 (10th Cir. 1997) for the proposition that the Disciplinary Board or panel is not empowered to consider constitutional issues.

McDevitt did not concern questions of abstention or exhaustion.  However, it did address the discipline of an attorney and the dismissal of his federal complaint.  In McDevitt, the attorney failed to comply with the legal advertising filing or fee requirements.  He did not submit his legal advertisements for review, and discipline was recommended.  1997 WL 88154 at *1.  McDevitt then attempted to raise facial challenges to the constitutionality of the Disciplinary Rules rather than any challenges based on how the rules were applied to him.  During the disciplinary hearing, the hearing panel held that it was not empowered to consider "the constitutional issues appellant raised." Id. at *2.

While McDevitt provides some support for Stein's position, the Court finds it neither persuasive nor binding.  It is factually distinguishable because here, Stein is raising primarily, if not entirely, challenges to the way the advertising rules were applied to him.  Moreover, the McDevitt opinion appears to be limited to the facts.  The Court specifically noted that the hearing panel determined it could not consider the "constitutional issues appellant raised," rather than any or all constitutional challenges.  Finally, the opinion is unpublished and as such, is non-binding.

Plaintiffs also argue that the Honorable Bruce Black's opinion in Bell v. Legal Advertising Committee, 998 F. Supp. 1231, 1235-36 (D.N.M. 1998), supports his position that an "absolute bar" prevents Stein from raising his constitutional challenges in the disciplinary proceedings.  Bell is of

little assistance to Stein.  In <u>Bell</u>, the Court acknowledged that the LAC refused to consider any constitutional issues raised by Bell and that the disciplinary counsel opined it would be inappropriate for an administrative agency to rule on the constitutionality of Supreme Court rules.  <u>Id.</u> at 1234-35.  However, the situation in <u>Bell</u> involved Bell's attempt to reserve and avoid raising any constitutional issues during the disciplinary proceedings, so as to assert them only in a federal lawsuit.  <u>Id.</u> at 1235.  "[I]t is clear that Bell could have raised his constitutional claims in the New Mexico Supreme Court and requested a chance to adduce evidence relevant to those claims, but he failed to do so."  <u>Id.</u>

 Moreover, the Court in <u>Bell</u> provided the following guidance on the question:

> Counsel are not entitled to reserve constitutional challenges for the forum they believe to be most advantageous to their interest. . . .  During the state proceedings the attorney must raise all arguments, including constitutional arguments, against the discipline, or the arguments will be waived.  The simple expedient of failing to raise a federal constitutional argument cannot be used to move that constitutional claim from the state system to the federal.  In this case, Bell could have attempted to obtain the authority to run the questioned eight advertisements by making his constitutional arguments to the New Mexico Supreme Court.  Having failed to do so, he cannot now ask this Court for the same relief he could have sought during the disciplinary proceedings.

<u>Id.</u> at 1234.  Based on the <u>Bell</u> opinion, which this Court finds persuasive, Stein would be well-advised to raise all constitutional challenges before the hearing committee, Board and the New Mexico Supreme Court.  In any event, Stein fails to come forward with any authority that in this matter, the disciplinary proceedings would not afford him the opportunity to raise the constitutional challenges set forth in his First Amended Complaint.

 Plaintiffs also assert that they do not have a meaningful opportunity to seek review by New Mexico's Supreme Court with respect to any findings made by the Disciplinary Board.  [Doc. 49, at 5.]  Plaintiffs explain that the Supreme Court review of disciplinary proceedings is discretionary and that in <u>McDevitt</u>, the Supreme Court summarily denied the petition for review after imposition of

19

professional discipline.  Plaintiffs further contend that "it is axiomatic that in the appellate capacity, the Supreme Court will be limited in its review to the record made below – which will have no federal constitutional issues presented for review."  [Doc. 49, at 5-6.]

Plaintiffs are incorrect.  First, even if a Supreme Court may decline review of the administrative agency's decision, the "discretionary review of [an] entity's decision by state supreme court provided adequate opportunity to raise such claims."  Bell, 998 F. Supp. at 1235 (citing Hirsh, 67 F.3d at 713).  See also Berger, 983 F.2d at 723 n. 4 (the fact that a state supreme court does not engage in the review of constitutional claims is not dispositive of whether there was adequate opportunity to raise the constitutional claims).  Further, the Hirsh Court noted authority for the proposition that the opportunity to present the federal claims in a petition for writ of review was sufficient to trigger Younger abstention, "even though the court of appeal simply 'denied the petition without elaboration.'"  Hirsh, 67 F.3d at 713 (internal citations omitted).

Second, it is not "axiomatic" that the Supreme Court must limit its review to the record below.  Stein provides no legal authority for this position, nor has the Court located a rule that limits the Supreme Court review to the record below.  Moreover, Plaintiffs' argument presupposes that Stein will be precluded from raising the constitutional claims during the disciplinary proceedings, while the Court in Bell clearly advises that counsel should attempt to raise all such claims during those proceedings.

Additionally, Plaintiffs' arguments that review by the Supreme Court would be futile are belied by Stein's own history in raising such claims.  For example, by means of a discretionary writ, Plaintiffs have previously brought legal advertising issues to the New Mexico Supreme Court.  In 1995, Stein alleges that the Supreme Court preliminarily granted Stein's request for an extraordinary

writ and conducted oral argument on the petition brought by Stein.  [First Amended Complaint, at ¶ 23.]  On another occasion, Stein notes that the Supreme Court issued an Extraordinary Writ of Superintending Control prohibiting the LAC from taking certain actions against Stein related to legal advertising.  [Id.]  The issues presented to the Supreme Court were amicably resolved and the State's high court ultimately dismissed two petitions for relief.  The very fact, however, that the Supreme Court entertained the petitions and allowed oral argument belies Stein's claim that seeking relief in that forum would be a futile gesture.  Thus, Plaintiffs' futility argument is of little weight based on his own history.

Finally, there appears to be a risk-free avenue of challenge to the advertising review process that Stein could elect to utilize.  In Bell, Judge Black noted that the civil procedure rules, that apply to all Board proceedings, allow parties to bring declaratory-judgment actions.  The Court concluded that there was "no obvious reason Bell could not bring a declaratory judgment action before the Disciplinary Board, with subsequent review by the Supreme Court, which would allow Bell to raise constitutional challenges to the LAC decisions without having to defy those decisions.  Bell, 998 F. Supp. at 1237.  This remedy appears to be equally available to Stein.

### D. Bad Faith Exception to Younger Doctrine

Plaintiffs also contend that Younger abstention cannot apply under these circumstances because the disciplinary proceedings are biased and should not enjoy the presumption of honesty and integrity.  [Doc. 49, at 7.]  In support of this argument, Stein argues that he initially was not provided with the name of the attorneys who complained of his advertising.  Stein also opines that there is no assurance on the good faith or word of Defendants because when he believed that they had agreed

21

to stay the disciplinary proceedings, Defendants "went back on their word and would only allow a 30 day stay." Thus, according to Plaintiffs there is "presumptive prejudice."

"[I]t is the plaintiff's 'heavy burden' to overcome the bar of <u>Younger</u> abstention by setting forth more than mere allegations of bad faith or harassment." <u>Weitzel</u>, 240 F.3d at 877 (internal citation omitted). It is true, however, that abstention is improper in the "extraordinary circumstances" where the state tribunal (or agency) is found incompetent by reason of bias. <u>Hirsh</u>, 67 F.3d at 713 (internal citation omitted). Again, the complaining party must overcome a presumption of honesty and integrity. <u>Id.</u>

Here, Plaintiffs' allegations simply do not overcome the presumption. Plaintiffs fail to come forward with convincing evidence of specific facts demonstrating bad faith or bias. Based on the record before the Court, it does not appear that the LAC and Disciplinary Board have done anything more than follow the statutory procedure in investigating matters related to legal advertising.

In sum, while the Court recognizes the importance of resolving constitutional claims and alleged civil rights violations, there are strong principles of comity that require abstention under the circumstances of this matter. Therefore, <u>Younger</u> abstention is proper.

## II.   EXHAUSTION

Exhaustion of remedies provides an additional reason for this Court to abstain from hearing this matter. "The exhaustion of remedies doctrine is similar to the doctrine of abstention." . . . It is a matter of judicial discretion, rather than jurisdiction." <u>Bell</u>, 988 F. Supp. at 1236 (internal citations omitted).

To determine whether exhaustion should be required, courts consider the following factors: (1) will requiring exhaustion impair the ability to subsequently obtain meaningful judicial review; (2)

is the state remedy adequate; (3) are the state administrative proceedings demonstrable biased against the complaining party.  Id.  In discussing the reasons that support abstention (*supra*), this Court already has concluded that Plaintiffs have an opportunity for meaningful judicial review, that the state remedies are adequate and that there is no evidence of demonstrable bias.  Therefore, like the Court in Bell, this Court agrees that "requiring exhaustion of . . . state remedies will ensure that [Plaintiffs] obtain[] judicial review from the entity best suited to decide issues concerning the state bar – the New Mexico Supreme Court."  Id.

## III.   STAY OF PROCEEDINGS VS. DISMISSAL, WITHOUT PREJUDICE

The United States Supreme Court has indicated that general principles of abstention may not support the "outright dismissal" of a case in which damages are sought.  However, in cases where a plaintiff seeks equitable relief, the federal court has an option of staying, dismissing or remanding the matter to state court.  Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 721, 116, S.Ct. 1712, 1723-24 (1996).  In Quackenbush, the plaintiff sought monetary damages based on common law breach of contract and tort claims, and the case was removed on the basis of diversity jurisdiction.

In this case, similar to Ford v. Tait, 163 F.Supp. 2d 57, 66-67 (D.D.C. 2001), Plaintiffs premise jurisdiction on federal-question jurisdiction by alleging constitutional deprivations.  In Ford, the plaintiff was an attorney being disciplined who also brought a § 1983 action, seeking declaratory relief, a permanent injunction, and damages.  The Court in Ford concluded that Younger abstention was warranted and dismissed the matter.  The Court further reasoned that the plaintiff sought primarily equitable relief and therefore, that the Quackenbush caveat advising courts not to dismiss cases in which monetary damages are sought need not be followed.  Ford, 163 F. Supp. 2d at 67.

Moreover, there is authority for the proposition that a dismissal, without prejudice, and a stay of proceedings, under circumstances like these, are not that different in result.  At least one Court has concluded that a dismissal without prejudice is the functional equivalent of a stay.  Discovery House, Inc. v. Consolidated City of Indianapolis, 970 F. Supp. 655, 661 (S.D. Ind. 1997).   Similarly, other courts have found the debate over whether to issue a dismissal rather than a stay of an action for damages to be somewhat academic because a stay is considered as much a refusal to exercise federal jurisdiction as a dismissal.  Goldhammer v. Dunkin' Donuts, Inc., 59 F. Supp. 2d 248, 252 (D. Mass. 1999).

The Court concludes that Plaintiffs, like the plaintiff in Ford, primarily seek equitable relief and that therefore, dismissal without prejudice is appropriate.

### Conclusion

For the above-stated reasons, the Court concludes that the Younger doctrine's abstention principles are applicable and that Plaintiffs' state remedies should first be exhausted.  Therefore, this case is dismissed, without prejudice.

Lorenzo F. Garcia
United States Magistrate Judge